JAMES ALBERT KEYES, Petitioner v. NORTH CAROLINA DEPARTMENT OF
TRANSPORTATION, Respondent

No. COA08-1542

(Filed 20 October 2009)

## 1. Public Officers and Employees— dismissal—deference to agency's interpretation of terms

The superior court did not err in a state employee's dismissal for cause action by deferring to the Department of Transportation's interpretation of the terms "safety-sensitive" and "CDL related" job functions, and by concluding that petitioner employee's position fell within those definitions.

## 2. Public Officers and Employees— dismissal—findings of fact—sufficiency of evidence

Although petitioner in a dismissal for cause of a state employee case argued on appeal that three of the superior court's findings of fact were unsupported by the evidence, irrelevant, and immaterial to the pertinent issues, petitioner in his brief only specifically challenged a portion of one finding, and that finding was supported by competent evidence.

## 3. Public Officers and Employees— dismissal—refusal to take drug test—willfulness

The superior court erred by affirming the Personnel Commission's conclusion that petitioner employee's refusal to take a drug test was willful, and the case was remanded, where the administrative law judge never reached the issue of willfulness and petitioner did not have the opportunity to present evidence on that issue.

Appeal by Petitioner from order entered 5 August 2008 by Judge William C. Griffin Jr. in Superior Court, Beaufort County. Heard in the Court of Appeals 18 August 2009.

*McCotter, Ashton & Smith, P.A., By Rudolph A. Ashton, III & Stephen A. Graves, P.A., for petitioner.*

*Attorney General Roy Cooper, by Assistant Attorney General Alexandra M. Hightower, for respondent.*

WYNN, Judge.

Petitioner James Albert Keyes appeals from a Superior Court order affirming the State Personnel Commission's decision to dismiss Petitioner James Albert Keyes for just cause. Upon review, we affirm in part, and remand for consideration of the issue of willfulness by the Administrative Law Judge.

The record tends to show that Keyes worked at DOT as a transportation worker, a position that required a commercial driver's license (CDL). On 14 October 2004, Keyes was assigned to work with supervisor Ronnie Whitley's crew as a "flagger." Shortly after arriving at work, Keyes received a phone call from his wife stating that the water heater at their home was leaking water. Thereafter, Keyes informed Whitley that he needed to go home to attend to the water heater situation. Whitley directed Keyes to his supervisor, Stan Paramore.

Upon telling Paramore of his need to go home immediately to attend to his water heater, Paramore informed Keyes that he had been selected for a random drug and alcohol test that morning. Paramore consulted with Woody Jarvis, the County Maintenance Engineer, and they informed Keyes that he had to take the random drug and alcohol test before leaving, but that he could go home after completing the test.[1] When Keyes insisted that he needed to leave immediately, Paramore and Jarvis advised him that failure to take the test could result in dismissal. Keyes chose to leave work immediately rather than wait to take the drug and alcohol test.

The next day, Keyes received notice of a pre-disciplinary conference, at which Keyes would have an opportunity to respond to a recommendation of dismissal for his refusal to take the drug and alcohol test. On 18 October 2004, Keyes attended the pre-disciplinary conference which resulted in a notice of dismissal being issued the next day. The dismissal notice cited the State Personnel Manual Section 9, stating, " 'The willful violation of known or written work rules' is unacceptable personal conduct for which disciplinary action may be imposed up to and including dismissal."

In response, Keyes filed a Petition for a Contested Case Hearing with the Office of Administrative Hearings, contending that DOT violated his due process and equal treatment rights under the law when it demanded that he take the drug test "at a time when he was faced

---

1. The record indicates that the testing facility did not open until 8:00 AM and that testing could take "a couple of hours."

with a family emergency that required his immediate attention." In a prehearing statement, Keyes argued that he was discharged without just cause; his refusal was not willful because of a family emergency; and DOT "acted erroneously, capriciously and arbitrarily, when it failed to postpone or re-schedule said random test in violation of G.S. 126-35(a) and G.S. 150B-23."

At the contested case hearing on 27 October 2005 before Administrative Law Judge Beecher R. Gray ("ALJ Gray"), DOT bore the burden of showing that it had just cause to terminate Keyes. After DOT presented its evidence, Keyes moved to dismiss on the ground that DOT failed to carry its burden of proof. Before Keyes presented any evidence, ALJ Gray granted the motion to dismiss on the ground that because Keyes was not performing a "safety sensitive" or "CDL-related" job function, DOT failed to show by a preponderance of the evidence that Keyes was subject to taking the drug and alcohol test under DOT's Controlled Substance and Alcohol Misuse Policy and Procedure. ALJ Gray specifically concluded that he did not reach the issue of willfulness.

From that narrow order, DOT filed objections and proposed alternative Findings of Fact and Conclusions of Law with the State Personnel Commission, which considered the matter on 16 February 2006 and issued a decision in March 2006, rejecting ALJ Gray's decision by concluding:

4. . . . Although the phrase "CDL related job functions" is not specifically defined in [DOT]'s policy, [DOT] is entitled to deference in its interpretation of its own regulations. It was reasonable for the [DOT]'s policy manager to interpret the phrase "CDL related job function" to include all employees whose job requires them to hold a CDL so that employees who are tested "immediately before, during or immediately after performing CDL related job functions" are those employees who are present for work and who perform CDL duties as part of their job description.

5. [DOT] did produce evidence that [Keyes] was directed to take a random drug and alcohol screening test on a day on which he was scheduled to be a [sic] work, performing the duties of a transportation worker. [DOT] produced evidence that the transportation worker position required a CDL, that [Keyes] in fact had a CDL and that a transportation worker was expected to be available to drive equipment requiring a CDL to operate at any time that he or she was at work.

(internal citations omitted). Additionally, although ALJ Gray had not reached the issue of willfulness at the initial hearing, the Personnel Commission nonetheless concluded that Keyes had acted willfully:

> 6. . . . [Keyes] had admitted that he refused the random drug and alcohol test after being advised that i[t] was a dismissible violation. Therefore, [Keyes]'s refusal was willful. [Keyes] was terminated for just cause (the willful violation of known or written work rules or in the alternative insubordination) as failure to complete the test is grounds for dismissal, according to the [] written policy.

(internal citations omitted).

Thereafter, Keyes filed a Petition for Judicial Review in Superior Court on 19 April 2006, which issued an order affirming the Personnel Commission's decision on 31 July 2006. Keyes appealed that decision to this Court, which remanded the matter to the Superior Court to make "findings of fact and conclusions of law in accordance with [N.C. Gen. Stat. §] 150B-51(c)." *Keyes v. N.C. Dep't of Transp.*, 187 N.C. App. 509, 653 S.E.2d 255, 2007 WL 4233649 (2007) (unpublished) (internal citation and quotation marks omitted). On remand, the Superior Court again affirmed the Personnel Commission's decision in a revised order filed on 5 August 2008.

Appealing from the 5 August 2008 order, Keyes now argues to this Court that the Superior Court erred by: (I) concluding that Keyes was subject to the random testing requirements; (II) making findings of fact which were unsupported by the evidence; and (III) concluding that Keyes's refusal to take the alcohol and drug test was willful because the ALJ did not reach the issue of willfulness and Keyes did not have opportunity to present evidence negating willfulness.

I.

**[1]** Keyes first argues that the Superior Court erred by giving deference to DOT's interpretation of the terms "safety-sensitive" and "CDL related" job functions, and concluding that Keyes's position fell within those definitions. He contends that because he was not performing "safety-sensitive" and "CDL related" job functions, he was not required to take the random drug and alcohol test on 14 October 2005. We disagree.

The DOT's Controlled Substances Abuse and Alcohol Misuse Standard Policy and Procedure "3.3.3 Random Testing (CDL EMPLOYEES ONLY)" states:

**KEYES v. N.C. DEP'T OF TRANSP.**

[200 N.C. App. 395 (2009)]

Unannounced random testing shall be completed on a certain number of employees who are required by the USDOT to have a CDL to perform one or more of their job functions. The FHWA [Federal Highway Administration] requires that the NCDOT randomly test all employees who perform "safety sensitive functions." "Safety Sensitive Functions" are defined as the functions required by Commercial Motor Vehicle Operators. Commercial Motor Vehicle Operators are required to have a CDL. . . . Employees whose names are randomly selected from the pool must be tested just before, during, or immediately after performing CDL related job functions.

N.C. Dep't of Transp., Controlled Substance and Alcohol Policy § 3.3.3 (1999).[2] The terms "safety sensitive functions" and "CDL related job functions" are not defined in DOT's rules or in the Office of State Personnel's regulations. However, relevant federal regulations provide helpful guidance, particularly because DOT's drug testing program is required by the Federal Highway Administration.

Definitions for these terms appear within the United States Department of Transportation's regulations as follows:

*Driver* means any person who operates a commercial motor vehicle. This includes, but is not limited to: Full time, regularly employed drivers; *casual, intermittent or occasional drivers*; leased drivers and independent owner-operator contractors.

. . .

*Performing (a safety-sensitive function)* means a driver is considered to be performing a safety-sensitive function during any period in which he or she is *actually performing, ready to perform, or immediately available to perform any safety-sensitive functions.*

. . .

*Safety-sensitive function* means *all time from the time a driver begins to work or is required to be in readiness to work until*

---

2. Section 3.3.3 does not state that refusal to submit to a random drug test will be treated as a positive result, but other related provisions do. For example, note 3 to section 3.3.2, providing for post-accident testing, states: "Employees must submit to post-accident testing and are responsible for ensuring that timelines are met for post-accident testing. If an employee refuses to be tested . . . he or she will be subject to the consequences of a positive test result which is dismissal." Also, section 11.1.1(b), stating the responsibilities for CDL employees, provides that "[e]mployees testing positive for controlled substances shall be dismissed."

*the time he/she is relieved from work and all responsibility for performing work.* Safety-sensitive functions shall include:

. . .

(4) All time, other than driving time, in or upon any commercial motor vehicle except time spent resting in a sleeper berth (a berth conforming to the requirements of Sec. 393.76 of this subchapter);

(5) All time loading or unloading a vehicle, supervising, or assisting in the loading or unloading, attending a vehicle being loaded or unloaded, remaining in readiness to operate the vehicle, or in giving or receiving receipts for shipments loaded or unloaded . . . .

49 C.F.R. § 382.107 (2009) (emphasis added).

Here, Keyes argues that he was not subject to DOT's drug testing policy on 14 October 2004 because he had only been assigned to "flagging" that day, and DOT's interpretation of flagging as a safety sensitive or CDL related job function is not a reasonable interpretation entitled to deference. *See Morrell v. Flaherty*, 338 N.C. 230, 238, 449 S.E.2d 175, 180 (1994) (An "agency's interpretation [of its regulations] must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.") (internal quotation marks and citations omitted), *cert. denied*, 515 U.S. 1122, 132 L. Ed. 2d 282 (1995). However, Keyes does not dispute the Superior Court's findings that his job required him to hold a CDL, he could be required to operate commercial equipment on any work day, and he had operated heavy equipment and trucks in the past.

Indeed, the record shows that Keyes had in the past and could in the future be required to operate commercial equipment. Moreover, the record shows that although he performed flagging duty, he was immediately available to operate equipment requiring a CDL. Accordingly, on 14 October 2004, Keyes was at minimum an "occasional driver" according to the USDOT's regulations which guided DOT's interpretation of its rules and regulations. We, therefore, hold that because DOT's interpretation of its rules and regulations was neither plainly erroneous nor inconsistent with its regulations, the Superior Court properly held that Keyes was subject to the random drug test on 14 October 2004.

## II.

**[2]** Keyes next argues that the Superior Court's findings of fact numbers 17, 18, and 19 are unsupported by the evidence, and are "irrelevant and immaterial to the issues at bar." However, in his brief on appeal, Keyes only specifically challenges the portion of finding of fact number 18 stating "every person who has refused to take a screening test has been terminated."

Keyes argues this finding is improper in light of the following testimony by Jarvis: "If [an employee is]˙sick or on vacation or working somewhere outside the Division, anybody could be excused from a drug test." However, the record also contains testimony from Ms. Roberts, the administrator of DOT's drug testing program, stating that to her knowledge every employee who refused a drug test has been dismissed.

Because the Superior Court's finding is supported by substantive evidence, we affirm finding of fact number 18.

## III.

**[3]** Finally, Keyes argues that, even if the Superior Court correctly concluded that he was subject to DOT's random drug test, the matter should be remanded to the ALJ to give Keyes an opportunity to present evidence negating willfulness. We agree.

N.C. Gen. Stat. § 150B-51 outlines the proper scope of review for a final agency decision in a contested case. Subsection (c) provides:

In reviewing a final decision in a contested case *in which an administrative law judge made a decision* . . . and the agency does not adopt the administrative law judge's decision, the court shall review the official record, de novo, and shall make findings of fact and conclusions of law. In reviewing the case, the court shall not give deference to any prior decision made in the case and shall not be bound by the findings of fact or the conclusions of law contained in the agency's final decision. The court shall determine whether the petitioner is entitled to the relief sought in the petition, based upon its review of the official record. The court reviewing a final decision under this subsection may adopt the administrative law judge's decision; may adopt, reverse, or modify the agency's decision; may remand the case to the agency for further explanations under G.S. 150B-36(b1), 150B-36(b2), or 150B-36(b3), or reverse or modify the final decision for the

agency's failure to provide the explanations; and may take any other action allowed by law.

N.C. Gen. Stat. § 150B-51(c) (2007) (emphasis added). Additionally, on review of a final agency decision allowing judgment on the pleadings,

> the court may enter any order allowed by G.S. 1A-1, Rule 12(c) or Rule 56. If the order of the court does not fully adjudicate the case, the court shall remand the case to the administrative law judge for such further proceedings as are just.

N.C. Gen. Stat. § 150B-51(d) (2007); *see also Eury v. N.C. Employment Sec. Comm.*, 115 N.C. App. 590, 446 S.E.2d 383 (remanding to the Superior Court for remand to the Personnel Commission in light of errors of law and the resultant incomplete condition of the record), *disc. review denied*, 338 N.C. 309, 451 S.E.2d 635 (1994).

Here, after DOT's presentation of the evidence at the contested case hearing, Keyes moved for involuntary dismissal under N.C. Gen. Stat. § 1A-1, Rule 41(b) (2007), arguing that DOT failed to present sufficient evidence to meet its burden of proof to show that he was subject to random testing. The record shows that ALJ Gray set forth narrow grounds when concluding that DOT failed to show just cause, and specifically stated that he was not reaching the issue of willfulness:

> 5. [DOT]'s failure to show by a preponderance of the evidence that [Keyes] was directed to take a random drug and alcohol testing just before, during, or immediately after performing CDL-related job functions violates [DOT]'s Controlled Substance and Alcohol Misuse Standard Policy and Procedure. *Because of this violation, it is not necessary for the court to reach the issue of whether [Keyes] willfully failed to submit himself to random drug and alcohol testing.*

(Emphasis added). Because ALJ Gray never reached the issue of willfulness and Keyes did not have the opportunity to present evidence on that issue, the only issue before the Personnel Commission was whether ALJ Gray properly decided that Keyes was not subject to being dismissed under DOT's Controlled Substance and Alcohol Misuse Standard Policy. Upon rejecting the ALJ's determination that DOT failed to carry its burden of proof on that issue, the matter should have been remanded to the ALJ for further hearing on the issue of whether Keyes's refusal to take the test was "willful."

Accordingly, we hold that the Personnel Commission erred in concluding that Keyes's refusal to take the drug test was willful, and the Superior Court erred in affirming this decision. Therefore, we remand to the Superior Court for remand to the Personnel Commission for further hearing on the issue of willfulness. § 150B-51(d).

Affirmed in part, remanded in part.

Judges STROUD and BEASLEY concur.